# SOUTHERN OREGON BROADCASTING CO. dba SOUTHERN OREGON CABLE TV. *v.* DEPARTMENT OF REVENUE

Paul E. Geddes, Geddes, Felker, Walton & Richmond, Roseburg, represented plaintiff.

Ted E. Barbera, Assistant Attorney General, Salem, represented defendant.

Decision in part for plaintiff and in part for defendant rendered April 19, 1971.

LOREN D. HICKS, Judge Pro Tempore.

This case concerns the true cash value of the plaintiff's cable television trunk and distribution system in and around Roseburg, Oregon, for 1969-70 ad valorem tax purposes. The county assessor fixed the value at $43,000 which was sustained by the Douglas County Board of Equalization and the State Department of Revenue. The taxpayer contends the value is $20,000. On appeal to this court, the parties stipulated to submit the case for decision on written briefs and the transcript of testimony and exhibits from the hearing before the Department of Revenue.

There is no disagreement in the testimony that much of plaintiff's system, though serviceable, is obsolete. It is a 12-channel television cable system con-

sisting of trunk and distribution cable, amplifiers, connectors, drops to individual customers and miscellaneous hardware. The system was first put in operation in 1954 and was purchased by plaintiff in 1958. Extensive repairs, replacements and additions have been made from time to time, especially in 1964. The system, however, still uses out-of-date tube amplifiers and old-style cable. If the system were to be replaced today, transistorized solid-state equipment and improved cable would be used with a substantial lowering of operational costs for power and maintenance.

The parties agree that the cost approach is the proper method to arrive at true cash value in this particular case. ORS 308.205 provides that "[w]ith respect to property which has no immediate market value, its true cash value shall be the amount of money that would justly compensate the owner for loss of the property."

A major point of controversy in the case is whether the reproduction or the replacement cost approach should be used. Reproduction cost is the cost of duplicating the plaintiff's television cable system with an exact replica, whereas replacement cost is the cost of building a substitute system using technologically improved methods, materials and parts. Plaintiff's estimate of the cost of reproducing the same system in kind is $104,437.57 while defendant's estimate of the cost of reproduction is $141,000. Defendant's estimate of replacing the present system with a modern, improved substitute is $166,900.

Plaintiff argues for the use of the reproduction cost method on the grounds that it is lower than replacement cost, that plaintiff's present system is still serviceable and could in fact be reproduced because

all of the required components are still available on the market and that the reproduction computations are more direct and produce more certain and accurate results. Defendant, on the other hand, argues that the replacement method more accurately represents what would actually happen if the property were to be rebuilt.

From the state of the record, the court cannot determine which is the more reliable method in this case. There is no evidence to persuade the court that the assessor erred in using the replacement method or that the reproduction method should be adopted over the replacement method; therefore, plaintiff, who has the burden of proof, cannot prevail on its contention for use of the reproduction method in place of the replacement method.

Except for one point to be dealt with later, the court finds that plaintiff has also failed to sustain its burden of proof on the allegation that the assessor's estimate of the new replacement cost of the system is excessive. The county appraiser, a man with 15 years of experience as an industrial appraiser, testified that in his appraisal of plaintiff's property he made an extensive study of the television industry, interviewed plaintiff's maintenance man, researched equipment catalogs and studied recent examples of cable system valuations in Oregon. Based upon information so gained, he arrived at a per mile replacement cost of $3,700 for the cable and accessories. The court finds this per mile estimate to be reasonable and proper. The county appraiser estimated the total new cost of the drops in the system at $30,000. This also is found to be a reasonable estimate.

The evidence is in conflict as to the number of miles of trunk and distribution cable in the system. Plain-

tiff's witness, by measurement on maps and drawings, calculated 35 miles, while defendant's witness, without stating his basis, estimated 37 miles. On this issue the weight of the evidence favored the plaintiff. The court finds that the length of plaintiff's trunk and distribution cable is 35 miles.

Another issue, and a vital part of the replacement cost method of appraisal, is the difficult problem of arriving at a dollar amount to be subtracted from the replacement cost new to allow for factors of physical depreciation and functional obsolescence. Physical depreciation refers to deterioration caused by wear and tear through use and the passage of time. Functional obsolescence reflects loss of value because of impairment of efficiency brought about by technological improvements resulting in the availability of more reliable and efficient equipment.

The county appraiser estimated the physical depreciation on the assessment date to be 62.9 percent of cost new. Although plaintiff's evidence raised some doubt as to whether this was a high enough rate of depreciation, there was insufficient evidence to refute it.

In computing the dollar amount of functional obsolescence, the county appraiser calculated that the operational expenses saved by use of improved cable and transistorized amplifiers would amount to $7,500 annually. He then adjusted this figure downward to reflect earnings and tax factors connected with the savings, leaving a net amount of operational expenses saved of $3,450. The appraiser capitalized this figure at 12 percent and used a remaining economic life of 10 years and, by further calculations not included in the record, arrived at a decrease of $19,210 on account

of functional obsolescence. The record in the case affords no basis to refute this figure and the presumption that it is correct.

Based on the foregoing, the true cash value of plaintiff's property for the 1969-70 tax year is computed to be:

Replacement cost:
| | | |
|---|---|---|
| 35 miles of cable at $3,700 | $129,500 | |
| Drops | 30,000 | $159,500 |

Less:
| | | |
|---|---|---|
| Depreciation at 62.9% | $100,325 | |
| Functional obsolescence | 19,210 | 119,535 |

| | | |
|---|---|---|
| True cash value | | $ 39,965 |

Costs to the plaintiff.